UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUTH SHERMAN, executor of the Estate of Bradley Olsen-Ecker,<br>    *Plaintiff*,<br><br>    v.<br>SYLVIA MATHEWS BURWELL, Secretary of Health and Human Services,<br>    *Defendant*. | No. 3:15-cv-01468 (JAM) |

**RULING DENYING MOTION TO DISMISS AND
GRANTING MOTION FOR CLASS CERTIFICATION**

This is a case about a Medicare recipient's probability of obtaining payment for services. Plaintiff Ruth Sherman, the executor of the estate of Medicare beneficiary Bradley Olsen-Ecker, alleges on behalf of Olsen-Ecker's estate as well as many other Medicare beneficiaries that the Department of Health and Human Services (HHS) has routinely and erroneously denied claims at the first levels of review. She claims that HHS has denied claims to the extent that, at times, less than 1% of claims reviewed received payment. Plaintiff alleges that the defendant, Secretary Sylvia Burwell of HHS, had reviewers apply a secret policy in administering and denying claims. Although plaintiff cannot say what secret method was used to deny the claims, she contends that such a low claim-approval rating must violate the right to due process under the Fifth Amendment of the Constitution and rights under the Medicare statute. Defendant has moved to dismiss the case and deny class certification. I will deny the motion to dismiss in large part and grant class certification.

**BACKGROUND**

Bradley Olsen-Ecker was a 69-year-old Medicare beneficiary suffering from debilitating illness who needed home health care services after being released from a long period of

hospitalization. Olsen-Ecker has since passed away, and his wife, Ruth Sherman, has continued the litigation as the executrix of his estate. When Olsen-Ecker arrived home in April 2015, he began receiving home health care services from a Medicare-certified home health agency including skilled nursing visits and physical therapy by order of his primary care physician. After a few months of receiving services, the home health agency informed Olsen-Ecker that Medicare would no longer cover physical therapy or skilled nursing visits. Olsen-Ecker appealed this decision through Medicare's four levels of review and, at the time of the filing of his complaint, had been denied at the first three levels of review and was awaiting decision at the fourth level of review.[1] He continued to receive physical therapy through the home health agency and paid out of pocket.

The current Medicare appeals process involves four separate levels of review. First, Medicare beneficiaries who wish to appeal a decision receive a paper review redetermination by the original contractor who made the determination. A "paper review" is a review of the documents alone, without an in-person hearing. If that review fails, the beneficiary requests reconsideration by a separate entity that contracts with HHS (known as the Qualified Independent Contractor, or QIC). If a beneficiary does not obtain relief from the QIC's review, he may request a hearing before an ALJ. Finally, if the claim is denied by the ALJ, a beneficiary may receive a paper review by the Medicare Appeals Council. There is also an expedited process available, of which Olsen-Ecker took advantage of in his appeals process.

The current review process went into effect in 2010. Previously, a Medicare beneficiary who wanted to appeal an initial adverse determination first obtained a paper review by the original contractor. If that appeal was denied, then the beneficiary could either receive a *de novo*

---

[1] In February of 2016, plaintiff's claims were paid through a "demand bill" procedure in which the care provider, not the plaintiff (though at the recommendation of plaintiff's counsel), submitted a bill to Medicare directly for "medical review." *See* Doc. #50-1 at 3.

2

hearing in front of an ALJ or a "carrier hearing" before a hearing officer, depending on the type of Medicare benefits the beneficiary received. Either way, the second level of review under the old review system involved a hearing and not just another paper review. Then, if the beneficiary still wanted to appeal, he either received a paper review by the Medicare Appeals Council, or an ALJ hearing if he had not had one before, and then a paper review by the Medicare Appeals Council.

According to plaintiff, this change in process has resulted in a drastic reduction in the number of appeals that result in a favorable coverage determination for beneficiaries at the first two levels of review—the redetermination by paper review by the original contractor, and the reconsideration by paper review by the QIC. These two levels of reconsideration have success rates for claimants as low as .61% each year, or as high as 2.2%. The total number of redetermination requests has also increased nearly ten-fold from 13,385 in 2008 to 112,844 in 2012. The change has also placed a great burden on the ALJs, increasing their workload by 184%. In the meantime, the reversal rate by ALJs—resulting in favorable coverage decisions—is about 70% across all of Medicare, and 62% on home health care and hospice decisions, according to HHS.

Plaintiff also contends that this new process resulted in Olsen-Ecker being denied coverage for a claim that should have been easily covered. In Olsen-Ecker's particular case, plaintiff alleges that Olsen-Ecker at first received necessary home health care by skilled caregivers, for tasks including tracheostomy care, suctioning, supplemental oxygen, tube feedings, medications, and wound care, but then his Medicare-approved provider denied his claims for continued skilled care, stating that Olsen-Ecker's health care needs could be met "by patient or unskilled caregivers," the cost of which was not covered by Medicare. Doc. #1 at 11.

He also had been receiving physical therapy that was discontinued because he had reached "maximum potential." *Ibid.* Olsen-Ecker continued to receive physical therapy, but ceased using skilled home health care.

Olsen-Ecker appealed both of these denials, citing the need for ongoing skilled care due to his multiple medical issues to avoid readmission to the hospital, and the care provider found that "[a]lthough monitoring for early detection of problems may appear rational, it would not justify continuation of these skilled services." *Id*. at 12. Olsen-Ecker appealed to the QIC, the second level of review, which affirmed the denial of care. The QIC's decision noted that Olsen-Ecker required treatment including assessing body systems, assessing the effectiveness of medications, instructing the caregiver on tube feeding and tracheostomy care and suctioning, and providing early detection and intervention for symptoms, but that these services "d[id] not require the unique skills of a licensed therapist or nurse for safe and effective delivery." *Id.* at 13.

Olsen-Ecker appealed this decision to the ALJ level, where he was again denied. He appealed this decision to the Medicare Appeals Council, the final level of review. At the time of the filing of the complaint, Olsen-Ecker was still waiting for the Council to rule. While he was waiting, Olsen-Ecker passed away. During the pendency of Olsen-Ecker's appeals, plaintiff's counsel asked the physical therapy care provider to request a "demand bill" from Medicare. Through the demand bill procedure, the care provider has now been reimbursed by Medicare for the physical therapy sessions not originally covered.

Defendant now brings a motion to dismiss plaintiff's lawsuit for lack of jurisdiction, on the grounds that plaintiff has failed to exhaust administrative remedies, that plaintiff's claim is now mooted as the estate has been paid, or alternatively, for failure of plaintiff to state a claim upon which relief can be granted. *See* Doc. #31. Defendant has also opposed plaintiff's motion

for class certification. *See* Docs. #13 (motion for class certification), #21 (opposition to class certification).

## DISCUSSION

### A. *Jurisdiction*

As a threshold matter, I must determine whether this Court has jurisdiction and if plaintiff has standing to pursue her claim. The Medicare statute provides exclusive judicial review of agency determinations under 42 U.S.C. § 405(g):

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . .

*Id.* Further, the statute expressly limits judicial review under general federal question jurisdiction in § 405(h):

> No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim *arising under* this subchapter.

42 U.S.C. § 405(h) (emphasis added). A claim "arises under" the Medicare statute not only when the claim challenges a direct denial of benefits, but also when a claim challenges "agency policy determinations . . . or . . . the application, interpretation, or constitutionality of interrelated regulations or statutory provisions." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 14 (2000).

#### 1. Exhaustion of Administrative Remedies

Exhaustion of the administrative review process is required for a court to exercise jurisdiction. *See Mathews v. Eldridge*, 424 U.S. 319, 323, 327 (1976). A final decision consists of two elements: a jurisdictional, non-waivable requirement that the claim for benefits has been presented for decision to the agency, and a waivable requirement of exhaustion of the agency's

administrative review process. *Mathews*, 424 U.S. at 328-30; *Weinberger v. Salfi*, 422 U.S. 749, 764-65 (1975).[2]

While exhaustion is the general rule, the agency may waive the exhaustion requirement, or a court may deem the exhaustion requirement waived when "a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate" as to whether to forego the entirety of the administrative review process. *Bowen v. City of New York*, 476 U.S. 467, 483 (1986). A court may excuse a plaintiff's failure to exhaust the agency's administrative review process if (1) the claim is collateral to a demand for benefits, (2) exhaustion would be futile, or (3) irreparable harm would occur if exhaustion were required. *See, e.g.*, *Skubel v. Fuoroli*, 113 F.3d 330, 335 (2d Cir. 1997); *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996).

I find that plaintiff has satisfied this test and deem exhaustion waived. Plaintiff's claim is collateral to a demand for benefits because she challenges the underlying validity of the agency's policies, not how those policies were applied to Olsen-Ecker's situation in particular. *See City of New York v. Heckler*, 742 F.2d 729, 736-37 (2d Cir. 1984), *aff'd sub nom. Bowen v. City of New York*, 476 U.S. 467 (1986). Exhaustion here would be futile; the "procedural right that claimants sought to obtain . . . could not have been vindicated by individual eligibility decisions." *State of N.Y. v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990); *see also Landers v. Leavitt*, 232 F.R.D. 42, 46 (D. Conn. 2005). Even though Olsen-Ecker's denied Medicare claims were ultimately paid in this case, the procedural right claimed here (to proper early-level review) has not been remedied by later payment of the underlying benefit.

---

[2] Plaintiff has satisfied the requirement for presentment, which only requires that the plaintiff have actually appealed the initial determination—*i.e.*, presented the claim directly to the agency for review under the administrative review process. There is no dispute that plaintiff has done that here.

6

Plaintiff further presents a colorable claim of irreparable harm that would result from being forced to complete the administrative process in order to waive exhaustion. *See Heckler v. Ringer*, 466 U.S. 602, 640-41 & n.32 (1984). Not only are constitutional deprivations such as the due process deprivation alleged here generally considered *per se* irreparable harm, but courts should be "especially sensitive to . . . harm where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place." *Sullivan*, 906 F.2d at 918; *see also St. Francis Hosp. v. Sebelius*, 874 F. Supp. 2d 127, 134 (E.D.N.Y. 2012) ("Generally, in this Circuit, a constitutional deprivation constitutes per se irreparable harm."). Therefore, I find that plaintiff was not required to engage in further exhaustion of administrative remedies before pursuing judicial review in this case under § 405(g).

### 2. Mootness

Defendant further contends that plaintiff's claim and the related class claim is mooted by plaintiff's eventual receipt of benefits for the previously denied home health care services. It is well established that "[t]he Case or Controversy Clause of Article III, Section 2 of the United States Constitution limits the subject matter jurisdiction of the federal courts such that the 'parties must continue to have a personal stake in the outcome of the lawsuit.'" *Tanasi v. New All. Bank*, 786 F.3d 195, 198 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 979 (2016). And the Second Circuit has made clear that "a class action cannot be sustained without a named plaintiff who has standing." *Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011). Here, Olsen-Ecker's individual claim is moot because, as of February 2016, the plaintiff has been reimbursed for the home health care services that were initially denied under the allegedly improper early-level procedure. *See* Doc. #50.

But plaintiff's class action claim may still survive under the relation-back doctrine, which "preserv[es] the claims of some named plaintiffs for class certification purposes that might well be moot if asserted only as individual claims." *Amador*, 655 F.3d at 99; *see also Landers*, 232 F.R.D. 47 ("[I]n certain circumstances, to give effect to the purposes of" class actions, "it is necessary to conceive of the named plaintiff as part of an indivisible class and not merely a single adverse party even before the class certification question has been decided."). For example, where the issue or wrong in a case is "inherently transitory"—that is, where a court is unlikely to resolve the issue or to rule on a plaintiff's certification motion before his or her injury is resolved through other means—such cases would otherwise be "capable of repetition, yet evading review . . . no matter who prosecute[s] them." *Amador,* 655 F.3d at 100–01; *see also Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991). The Supreme Court has recently suggested that this is especially true if the relief requested is injunctive. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1531 (2013) ("Unlike claims for injunctive relief challenging ongoing conduct, a claim for damages cannot evade review."); *Exley v. Burwell*, 2015 WL 3649632, at *2 (D. Conn. 2015).

Plaintiff's claim here is preserved for purposes of the class action. At the time the complaint was filed, Olsen-Ecker had not yet received the benefits sought at the first two levels of review and had been subject to the allegedly improper claims review procedure. Because all class members will have been denied benefits at the first two levels of review, it is likely that many of them will be in the process of appealing that decision and may receive a reversal decision at some point. Due to the looming possibility of a reversal decision, a claim that alleges improper denial of benefits at lower levels of review is inherently transitory. Receiving a

decision of reversal does not fix the process at the lower levels of review, and in fact may be evidence of that improper process. Plaintiff's claim survives under the relation-back doctrine.

### B. Motion to Dismiss for Failure to State a Claim

Defendant has moved to dismiss plaintiff's claim on the grounds that her claim of the application of a secret policy is not plausible on its face. It is well established that the Court must accept as true all factual matter alleged in a complaint and draw all reasonable inferences in a plaintiff's favor. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). But "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff raises two related claims. First, she claims that the government's policies and practices that result in a high denial rate at the first two levels of review violate her rights to due process under the Fifth Amendment, and second, that the policies and practices are violations of the Medicare statute's right to timely and meaningful review. I will address each of these claims in turn.

### 1. Due Process Claim

The Due Process Clause "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning" of the Fifth Amendment. *Mathews*, 424 U.S. at 332. To state a Due Process claim, a plaintiff must show that: (1) state action (2) deprived him or her of liberty or property (3) without due process of law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999); *see also Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015). The direct financial benefits of Medicare are property interests; "[t]he Government cannot withdraw these [Medicare or Medicaid] direct benefits without giving the

patients notice and an opportunity for a hearing on the issue of their eligibility for benefits." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 786-87 (1980).

But "a mere unilateral expectation of receiving a benefit, however, is not enough—a property interest arises only where one has a legitimate claim of entitlement to the benefit." *Barrows*, 777 F.3d at 113. A legitimate claim of entitlement is created when "the statutes and regulations governing the distribution of benefits meaningfully channel official discretion by mandating a defined administrative outcome." *Ibid.*

Defendant has only challenged plaintiff's assertion of a property right insofar as Olsen-Ecker or plaintiff had not yet been denied payment by the final level of Medicare review (an argument that I have already deemed unpersuasive in the exhaustion context, and that is not mooted by plaintiff's eventual receipt of payment as stated above). *See* Doc. #40 at 7-8.[3] At this stage, I will take the same approach as the Second Circuit did in *Barrows* and find that the property interest question "turns on facts that are, at this stage, contested." *Barrows*, 777 F.3d at 115. If plaintiff can show, as she alleges, that there is some secret practice that effectively "mandates a defined administrative outcome" in Olsen-Ecker's benefits appeal, then a property right may exist. And, if this secret practice to ministerially deny claims does exist, I would not have to determine the merits of plaintiff's underlying benefits claim in order to find a violation of due process before deprivation of the Medicare benefits in which plaintiff has a property interest.

When evaluating whether a particular procedure that affects a property interest satisfies due process, a court must consider: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation under the challenged governmental course of action and the probable value of providing additional procedural safeguards, and (3) the government's interest.

---

[3] The Court also addressed this issue with defendant at oral argument, where defendant continued to press the same argument.

*See Mathews*, 424 U.S. at 335; *Rosu v. City of New York*, 742 F.3d 523, 526 (2d Cir.), *cert. denied sub nom. Rosu v. City of New York, N.Y.*, 135 S. Ct. 710 (2014). Plaintiff alleges facts in the complaint to plausibly state a claim for relief under the Due Process Clause. There is a great private interest affected by the official action—the facts alleged, if true, could plausibly tend to show that many beneficiaries who are denied through an improper process depend on Medicare benefits for their medical treatment and would not be able to find or afford a private caregiver. The complaint also plausibly states a relatively high corresponding risk of erroneous deprivation; accepting plaintiff's allegation as true, the change in procedures has resulted in a higher level of erroneous deprivation. The facts alleged, if true, show that ALJs reverse the paper review decisions at least 62% of the time. The apparent value of adding additional, effective safeguards for meaningful review at the outset of the review process would be high.

The government's interest is also considerable; as defendant points out, the potential for fraud, waste, and abuse of Medicare benefits inspired the changes to the review system, which Congress felt would decrease abuse. Defendant contends that the low reversal rate during the first two stages of review is evidence of increased enforcement against abuse. But the complaint points out that there are more appeals to the ALJ than ever, which will also result in increased cost to the government. On balance, I find that plaintiff has plausibly alleged facts in support of a due process violation for the deprivation of a property right.

Defendant contends that plaintiff's claim is defeated because there exists an "obvious alternative explanation" for the high denial rates. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007) (finding plaintiffs' complaint insufficient because the facts could support a different and more likely theory based on local market conditions, not conspiracy). Defendant's suggested alternative explanation is that there are many different—and legitimate—reasons for

beneficiaries' claims to get denied at the lower levels of review, whether because beneficiaries are not homebound, or because the beneficiaries have not satisfied procedural requirements like meeting face-to-face with health care providers. *See* Doc. #32 at 12.

"The existence of other, competing inferences does not prevent the plaintiff's desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an 'obvious alternative explanation.'" *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013). I do not find defendant's alternative explanation to be sufficiently obvious. Defendant's explanation seems to be that the beneficiaries that are appealing after 2010 have decreased bases for coverage on either merit or procedural grounds, and the uptick in denial rates after the 2010 policy changes reflects the government's improved mechanisms for catching fraud. These are competing inferences that one might draw from the facts, but these explanations are by no means obvious.

Defendant further claims that the complaint should be dismissed because it does not contain sufficient factual content to "indicate . . . the basis for the denial[s]" and therefore "does nothing to demonstrate that secret policies and practices exist." Doc. #32 at 2. Aside from the named plaintiff's allegations described above, the complaint does allege some facts to demonstrate that changed policies plausibly exist that deprive some plaintiffs of meaningful review.

First, the statistics regarding the ALJ reversal rates indicate that not all of the first two levels of review tend to be accurate, because ALJs review the facts and find—in the majority of the cases—that the home health care service should be covered (the plaintiff contends that this rate of reversal may be as high as 62%). This suggests to me that whatever review occurred at the first two levels of review could have plausibly contained defects, because absent some

aberration, the first two levels of review should have granted coverage to a far greater proportion of beneficiaries.

Second, the difference between the pre-2010 initial redetermination and reconsideration rates and the post-2010 rates plausibly suggests a change in the substance of the policies in 2010 that resulted in the low coverage rates at the first two levels of review. This, combined with the somewhat unnerving alleged facts in Olsen-Ecker's case—that his first two levels of review found that tasks like assessing the effectiveness of medication and performing body system assessments could be performed by him or by unskilled care—suggests to me that it is not implausible to believe that there may have been some policy put in place that, when administered by the care providers and QICs, resulted in improper denials. *See, e.g.*, *Jimmo v. Sebelius*, 2011 WL 5104355 (D. Vt. 2011) (denying motion to dismiss in a case with an alleged "rule of thumb" supported by "at least *some* evidence in . . . the Individual Plaintiffs' cases" and other cases).

### 2. Medicare Statute Claim

Plaintiff further claims that the Medicare statute and the implementing regulations "entitle[]" beneficiaries "to timely and meaningful review." Doc. #38 at 15. The Medicare statute in question—42 U.S.C. §1395ff(3)(A) *et seq*. (redetermination and reconsideration process)—does not provide for such a right in specific terms. Rather, as plaintiff conceded at oral argument, the statute at most *implies* a right to meaningful review by setting out an appeals process.[4] I agree that the existence of the statute does imply such a right, but that right is properly vindicated under the Fifth Amendment's Due Process Clause. Plaintiff agreed at oral argument that the two claims were essentially the same, and denied bringing a claim under the review provisions of the Administrative Procedures Act. Because I can find no text in the Medicare

---

[4] Plaintiff further conceded that this was not "a delay case" but that the Court could look to delay cases to draw an underlying "right to timely and meaningful review" from the statute.

statute that authorizes a private plaintiff to bring a statutory claim, I will grant defendant's motion to dismiss plaintiff's statutory claim.

### C. Class Certification

Plaintiff has sought to certify a class to litigate these claims. She asks the Court to define the class as follows:

> All Medicare beneficiaries (1) who have received, are receiving, or will receive home health care services, (2) whose claims for coverage of those services under Medicare Part A or B (a) have been or will be denied at the initial determination stage, in whole or part, or who have received or will receive a notice of termination of coverage and (b) have been or will be denied, in whole or in part, at the two levels of review below the Administrative Law Judge level, and (3) for whom the initial determination or notice of termination of coverage was dated on or after January 1, 2012.

Doc. #13 at 1.

To certify a class under Rule 23(a) and (b) of the Federal Rules of Civil Procedure, the Court must ensure the proffered class meets certain prerequisites. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011); *Johnson v. Nextel Commc'ns*, 780 F.3d 128, 137-39 (2d Cir. 2015); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015). Specifically, Rule 23(a) provides that:

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, a party seeking class certification pursuant to Rule 23(b)(2) must show that the government "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate

14

respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). But "certification of a class for injunctive relief is only appropriate where 'a single injunction . . . would provide relief to each member of the class.'" *Sykes*, 780 F.3d at 80 (quoting *Dukes*, 564 U.S. at 360).

To satisfy the first Rule 23(a) requirement of "numerosity," plaintiff must demonstrate that the size and composition of the class is such that certifying "a class is superior to joinder" of individual plaintiffs to litigate their claims. Fed. R. Civ. P. 23(a)(1); *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). Here, plaintiff has satisfied this requirement; the proposed class could include at least 8,000 beneficiaries who have been denied benefits at the first two stages.

To satisfy the second requirement of Rule 23(a), plaintiff must demonstrate the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Sykes*, 780 F.3d at 80. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" through the same or similar conduct by the defendant. *Dukes*, 564 U.S. at 349-50. Moreover, they must share a claim that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Ibid.* To satisfy this requirement, it will suffice to show just "a single [common] question" among class members. *Id.* at 359; *see also Exley*, 2015 WL 3649632, at *4.

The proposed class satisfies the commonality requirement. Plaintiff here seeks to certify a class consisting of all Medicare beneficiaries who "have been or will be denied at the initial determination stage, in whole or part, or who have received or will receive a notice of termination of coverage" through the flawed review process that may include a "secret policy" that results in high denial rates. Determining whether or not this "secret policy" exists—and the

boundaries and contours of that policy—will resolve the due process issue that is central to the validity of the claims. If there is such a secret policy, it would "provide [an] independent bas[is] for liability for each of the claims advanced by plaintiffs." *Sykes*, 780 F.3d at 86 (noting that resolution of the common question is not required to be determinative of each element of each claim). The existence, or non-existence, of such a policy is a common question of fact— and the constitutionality of the existence of such a policy is a common question of law.

    Defendant argues that the class includes beneficiaries who were denied coverage at the first two levels of review for many reasons, and thus there is no common question among the class. But the question here is not as to the merits of each beneficiary's claim, but rather whether the putative class all suffered the same harm by having a secret policy applied regardless of the merits of their claims. *See Estate of Gardner v. Cont'l Cas. Co.*, 2016 WL 806823, at *11 (D. Conn. 2016) (finding commonality when plaintiffs alleged improper interpretation of insurance policy despite potentially differing medical eligibilities).

    Defendant further contends that the plaintiff has not shown by a preponderance of the evidence "that the beneficiaries have received adverse decisions for reasons unconnected to the merits of their claims." Doc. #21 at 13. That is not what the law requires. It is true that the "preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). But the relevant requirement here under Rule 23(a)(2) is that a common question of law or fact exists, and the *existence* of that question—not a particular resolution of that question (*i.e.*, that there is in fact a secret policy)—is all that need be shown at this time.

    Finally, defendant contends that the class members simply claim in too general a fashion that "they have all suffered a violation of the same provision of law," namely the Due Process

16

Clause, which is a claim that is too general to satisfy the commonality requirement. *See, e.g.*, *Dukes*, 564 U.S. at 349-50. But defendant overgeneralizes plaintiff's claim, which more specifically alleges a secret review policy in place that violates plaintiff's and other class members' rights to due process. This differs from the *Dukes* case, which involved a class-wide claim of Title VII employment discrimination that rested on allegations of discrimination occurring in any number of different ways by individual supervisors; here, the violation stems from the alleged existence and application of a secret denial policy put forth by defendant to apply to all class members.

Plaintiff likewise has satisfied the typicality requirement. Like commonality, the typicality requirement for class certification is satisfied when the claims of the class representatives are typical of those of the class members—where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Fed. R. Civ. P. 23(a)(3); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *see also Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 92 (D.Conn. 2010); *Exley*, 2015 WL 3649632, at *5. Here, if there was a secret policy, all class members suffered the same due process violation as they went through the same administrative review process. The underlying merits of each class member's claim are irrelevant to whether or not the policy existed and was applied to the putative class.

Finally, Rule 23(a)(4) requires that the Court determine "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d at 35. But a conflict "between named parties and the class they seek to represent" will be sufficient to defeat class certification only if the conflict is "fundamental." *Ibid.* Named plaintiff's interests are not antagonistic to the other members of the class. Plaintiff's attorneys are qualified and experienced, having years of dedicated practice in this area. *See Exley*, 2015 WL 3649632, at *6.

To satisfy the requirements of Rule 23(b)(2), plaintiff must demonstrate that "a single injunction or declaratory judgment would provide relief to each member of the class." Fed. R. Civ. P. 23(b)(2); *Dukes*, 564 U.S. at 360. The Rule "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant" or "when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360-61. Rather, the conduct at issue must be able to "be enjoined or declared unlawful as to all of the class members or as to none of them." *Id*. at 360. This "does not require that the relief to each member of the class be identical, only that it be beneficial." *Sykes*, 780 F.3d at 97. Here, the relief sought would satisfy the entire class by enjoining the use of the alleged secret denial policy, and there are no individualized awards of monetary damages.

### D. *Mandamus*

Plaintiff further asserts a claim for mandamus relief. The Second Circuit has long held that "[m]andamus may be awarded only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in

question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 132-33 (2d Cir. 2008). Because I will exercise jurisdiction under federal question jurisdiction pursuant to § 405(g) of the Medicare statute, there is no need for me to consider whether extraordinary mandamus jurisdiction and relief should be available.

## CONCLUSION

For the reasons set forth above, I conclude that the Court has subject matter jurisdiction, that the complaint plausibly states grounds for relief under the Due Process Clause, and that the requisites for class certification have been established. I therefore DENY defendant's motion to dismiss (Doc. #31) in large part and GRANT plaintiff's motion for class certification (Doc. #13).

It is so ordered.

Dated at New Haven this 8th day of August 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge